UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS AVALOS,

          Plaintiff,

    v.

DR. ASHBY, et al.,

          Defendants.

Case No. 24-cv-05581-RFL (PR)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dkt. No. 27

**INTRODUCTION**

Plaintiff Jose Luis Avalos alleges in this 42 U.S.C. § 1983 action that his doctor, Ashby, provided constitutionally inadequate medical care for his post-operative elbow, thereby violating his Eighth Amendment rights. Defendant Ashby moves for summary judgment on grounds that the undisputed record shows that he provided timely and thorough medical treatment. Avalos has not filed any response to the summary judgment motion.

Defendant's unopposed summary judgment motion is GRANTED. Avalos's deposition testimony refutes his allegations in the operative complaint. He testified that Defendant met with him immediately after his surgeries, examined and cleaned his wounds, and gave him advice about exercises and other post-operative care measures. He also testified that his wounds were cleaned and examined every day.

Also, Defendant has presented undisputed medical evidence that he provided Avalos with appropriate and timely treatment consonant with the post-surgical instructions. Specifically, he was instructed to perform his range of motion exercises, given pain medication, had his wound dressings changed daily, and staff spoke with the SJGH staff to make sure his splint was

1

appropriately arranged.  When there was a possibility of wound infection, Defendant sent Avalos to the hospital immediately, and closely treated and monitored his condition when he returned. This undisputed record shows attention and care rather than showing a genuine dispute of material fact that Ashby was deliberately indifferent.

## BACKGROUND

Avalos, a California state prisoner, had elbow replacement surgery (left elbow arthroplasty surgery) on April 26, 2023 at San Joaquin General Hospital (SJGH).  (First Am. Compl., Dkt. No. 12 at 3.)  Defendant Ashby was his primary care physician at CTF-Soledad. Avalos alleges that Ashby's post-operative treatment of his elbow caused his left elbow to become infected.  "Dr. Ashby was responsible to make sure that I got [] dressing changes and the surgery area was cleaned.  This was never done as Dr. Ashby . . . never ordered staff at C.T.F. to do[,] which caused and allowed it to get severely infected."  (*Id.* at 3.)  He alleges that on May 5, 2023 he was taken to the hospital for emergency immediate medical care and surgery due to severe swelling and infection because of medical mistakes in surgery.  (*Id.*)

Avalos's testimony at his deposition flatly contradicts the allegations in the operative complaint.  He testified that Ashby examined him the day after his first surgery, removed the cast, observed that everything was "fine" and "normal," and "cleaned all of the area that had been operated on.  He cleaned everything."  (MSJ, Pl.'s Depo., Dkt. No. 27-15 at 19.)  He also testified that "every morning" a CTF nurse would clean his elbow, examine it, and "do other post-operative procedures" following his first post-operative visit with Ashby.  (*Id.* at 20-21.) He further testified that Ashby told him to perform his exercises, and Avalos demonstrated those exercises at the deposition.  (*Id.* at 21.)

He also testified that Ashby saw him immediately after his return to the prison after his second operation.  (*Id.* at 28.)  Ashby cleaned and examined the wound, and advised him to perform his exercises and to not to get the wound wet.  (*Id.* at 28-29.)  At the deposition, Avalos blamed the infection on the surgeons at the outside hospitals.  (*Id.* at 31-34.)  He trusted Defendant to refer him to a competent surgeon, but Ashby failed to do so, and therefore is at

fault for the infection, an allegation Avalos does not make in his operative complaint.  (*Id.*)

Defendant Ashby presents a version of events different from those stated in the operative complaint.  He alleges that SJGH provided "operative and discharge materials outlined standard postoperative measures, including gentle range of motion, elevation of the extremity, sling use, and daily dressing changes, all of which Avalos was provided at CTF following his surgery." (MSJ, Dkt. No. 27 at 7.)  In fact, on April 27, 2023, the day after surgery, medical staff noted "appropriate postoperative pain management, and verified Avalos's splint positioning with his surgical team."  (*Id.*)  Specifically, medical staff gave him analgesics when Avalos complained of pain and spoke with the surgical team at SJGH to make sure the splint was properly positioned.  (MSJ, Ashby Decl. ¶ 4.)  On May 2, Ashby documented receiving and reviewing recommendations from Dr. Huish.  (MSJ, Dkt. No. 27 at 7.)  These included removing the splint after three to five days, and instructions for Avalos "to perform passive range of motion of his elbow, to change his dressings daily, that he may shower after 5 days, to keep the area elevated and use ice several times a day, and to follow-up with Dr. Huish in clinic in 2 to 4 weeks." (MSJ, Feinberg Decl. ¶ 16.)

On May 3, Defendant saw Avalos for a follow-up, and reviewed the recommendations with him.  (MSJ, Ashby Decl., ¶ 5; Feinberg Decl., ¶ 17.)  Because Avalos resisted moving his arm, Defendant, through a translator, told him it was important to perform the exercises for 15 minutes every waking hour or he would lose his range of motion in the elbow.  (*Id.*, Feinberg Decl., ¶ 17.)  Defendant also ordered pain medication, ice packs, and daily dressing changes. (*Id.*)

On May 5, swelling and color change raised concerns that the surgical wound was infected.  CTF medical staff, in consultation with Defendant, sent Avalos to the Natividad Medical Center (NMC) where he was treated with antibiotics.  (MSJ, Ashby Decl., ¶ 5; Feinberg Decl., ¶¶ 18-19.)  In fact, there was no documented infection at this time.  There was mild redness, but no pus.  It appeared to be "normal postop swelling."  (*Id.*)  Defendant stayed in communication with Avalos's surgeon throughout this postoperative time.  (*Id.*, Ashby Decl. ¶

3

5.)  The surgeon expressed no concern and planned continued follow-ups.  (*Id.*, Ashby Decl., ¶ 5; Feinberg Decl., ¶¶ 21, 28-30.)  After Avalos's return to CTF from NMC, Ashby and other medical staff evaluated him, treated his pain, scheduled orthopedic follow-ups, and instructed him to perform his range of motion exercises, which Avalos resisted performing.  (*Id.*, Ashby Decl., ¶¶ 5, 10; Feinberg Decl., ¶¶ 20-26.)

On July 22, Avalos complained of a possible cyst in his elbow and "needle poking" pain, and was prescribed antibiotics by a different doctor.  (*Id.*, Feinberg Decl., ¶ 37.)  On July 29, Avalos had a follow up with a nurse who noted that he had an open, warm, swollen wound.  (*Id.*, Feinberg Decl., ¶ 38.)  The nurse alerted Defendant, who immediately arranged for Avalos to have outside surgical care at SJGH.  (*Id.*, Ashby Decl., ¶ 7; Feinberg Decl., ¶¶ 38-39.)  The SJGH orthopedic surgeons removed the elbow hardware, placed an antibiotic spacer, and administered intravenous antibiotics to treat an infection.  (*Id.*)  After Avalos returned to CTF on August 8, Defendant gave him oral antibiotics, ordered lab monitoring, and continued follow-up and wound surveillance.  (*Id.*, Ashby Decl., ¶ 8.)  On August 13, Avalos signed a refusal of care after refusing a recommended treatment and triage area evaluation for slight wound dehiscence that day.  (*Id.*, ¶ 10.)

Defendant continued to monitor Avalos's healing through subsequent visits, including after a third revision surgery in January 2024.  (*Id.*, ¶ 9.)  Defendant notes that Avalos had been diagnosed with diabetes, which "increases the risk of surgical-site infection."  (*Id.*, ¶ 10.)

Avalos's medical records were examined by Dr. Bennett Feinberg, a licensed physician and the Chief Medical Consultant for the California Correctional Health Care Services (CCHCS) Office of Legal Affairs.  (MSJ, Feinberg Decl.)  Feinberg determined that Avalos received timely, adequate and appropriate medical attention and care.  (*Id.*, ¶ 40.)

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect

the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

## DISCUSSION

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of

criminal recklessness).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  *Id.*  Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and resulting harm. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

The Supreme Court has further clarified this standard by holding that "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  A mere accident or evaluative mistake is not to be characterized as wanton infliction of unnecessary pain.  *Estelle*, 429 U.S. at 105.  Instead, a plaintiff must show that his doctors or nurses embarked on a course of "medically unacceptable" treatment in "conscious disregard of an excessive risk to [his] health."  *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004).  A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment.  *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Summary judgment will be granted in Defendant's favor.  As an initial matter, Avalos's testimony refutes the allegations in the operative complaint.  He testified that Defendant met with him immediately after his surgeries, examined and cleaned his wounds, and gave him advice about exercises and other post-operative care measures.  He also testified that his wounds were cleaned and examined every day.

Avalos now blames the infection on the outside surgeons, and holds Defendant responsible for failing to refer him to a competent surgeon.  These allegations did not appear in the operative complaint, and therefore Avalos cannot now create a genuine dispute from such allegations.

Also, the undisputed medical evidence presented by Defendant shows that Ashby provided Avalos with appropriate and timely treatment consonant with the post-surgical

instructions.  Specifically, he was instructed to perform his range of motion exercises, given pain medication, and had his wound dressings changed daily, and staff spoke with the SJGH staff to make sure his splint was appropriately arranged.  Ashby received medical reports from prison staff confirming that these measures were taken.  He also met with Ashby for a follow up, reviewed his care and the post-surgical recommendations, ordered pain medication for him, and emphasized the importance of performing his exercises.  When there was concern in May that the wound may be infected, CTF staff and Defendant had Avalos sent to the hospital for treatment, and Defendant kept in touch with Avalos's surgeon.  When in July there was again a concern about infection, Defendant arranged for Avalos's immediate transfer to a hospital.  After his return, Defendant ordered antibiotics, lab monitoring, continued follow up and would surveillance.  This record shows attention and care, not deliberate indifference.

Avalos has filed no opposition, and therefore has not presented any competent medical evidence to dispute the evidence in his medical records or the evidence presented by Defendant.  That his wound may have become infected is not sufficient, especially in light of the undisputed showing that Defendant immediately addressed and treated his condition.  Avalos's conclusory allegations that Defendant's failure to provide adequate care cannot create a genuine dispute of material fact in the face of the undisputed medical evidence presented.  He has not presented any competent medical evidence to show that Defendant embarked on a course of "medically unacceptable" treatment in "conscious disregard of an excessive risk to [his] health," *Toguchi*, 391 F.3d at 1058-60, or otherwise failed to take reasonable steps to treat him, *Farmer*, 511 U.S. at 837.

Avalos did not file an opposition to the motion for summary judgment.  A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition.  *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact).  This is so even if the failure to oppose violates a local rule.  *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).  But a court may grant an unopposed motion for

7

summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), *rev'd on other grounds sub nom. Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

The evidence presented by Defendant supports his motion for summary judgment and Avalos has presented no competent medical evidence (and therefore has not shown a genuine dispute of material fact) that he received constitutionally inadequate medical care. The Defendant's papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact.

Defendant contends that he is entitled to qualified immunity. (MSJ, Dkt. No. 27 at 13.) The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show that the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence). "[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier*, 533 U.S. at 201; *see Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004) (in performing the initial inquiry, court is obligated to accept

8

plaintiff's facts as alleged, but not necessarily his application of law to the facts; the issue is not whether a claim is stated for a violation of plaintiff's constitutional rights, but rather whether the defendants actually violated a constitutional right) (emphasis in original).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Defendant is entitled to qualified immunity.  Avalos's deposition testimony wholly refutes the allegations in the operative complaint.  He admits that Defendant and prison staff cleaned his wound and provided appropriate post-operative care.  Because the allegations do not show a violation of a constitutional right, there is no necessity for further inquiries concerning qualified immunity.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.  (Dkt. No. 27.)  The Clerk shall terminate Dkt. No. 27.

**IT IS SO ORDERED.**

**Dated:**  April 14, 2026

RITA F. LIN
United States District Judge

9